**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Robert G. KNOCHE, Defendant and Appellant.**

No. 18424.

Supreme Court of South Dakota.

Submitted on Briefs Feb. 15, 1994.

Decided May 4, 1994.

on the habitual information. A new jury thereafter found Knoche to be a habitual offender, whereupon he received a 13–year sentence plus restitution to the victim in the amount of $321.31. On appeal, Knoche raises these issues:

I. Did the trial court err in admitting evidence of prior bad acts?

II. Did the trial court err in failing to give Knoche's proposed instructions to the jury?

III. Did the trial court err in ordering Knoche to display the tattoo on his forearm?

IV. Was the evidence sufficient to convict?

V. Did the trial court err by informing the habitual offender jury of the underlying conviction?

VI. Did the trial court err in not excusing a juror for cause who stated that she did not think she could presume Knoche innocent?

VII. Did the trial court err in failing to strike the habitual offender information?

VIII. Was Knoche's arraignment on the habitual offender charge a nullity because it was held prior to his conviction of the underlying charge?

IX. Did the trial court err in failing to dismiss the separate information for habitual offender because Knoche was not convicted of a crime of violence?

We affirm.

Mark Barnett, Atty. Gen., Patricia J. Froning, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Sean M. O'Brien, Brookings, for defendant and appellant.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Following extradition from Indiana, appellant Robert G. Knoche (Knoche) was arraigned on April 27, 1993 for forgery and a Part II information: habitual offender. On May 27, 1993, the jury found him guilty of forgery. The following day, Knoche was re-arraigned

### FACTS

Deloris Fawley cooked and cleaned for the Dakota Inn restaurant until August 31, 1989. Often, Knoche would go to the restaurant and wait for Deloris to get off work. Two weeks after Deloris left this employment, R.J. Reimers (Reimers), owner of the restaurant, learned that the Dakota Inn checking account was overdrawn. After discovering checks numbered 968–1064 were missing from her check ledger and the signature on the cashed checks, which had been forwarded to her bank, was not hers, Reimers filed an affidavit of forgery with the sheriff's office.

One of the forged checks was made payable to "Humphrey" and signed by "Robert Knoche." Knoche was not authorized to sign checks for Dakota Inn. Other checks were made payable to Knoche and signed by "R.J. Reimers" with a "payroll" notation at the bottom. Knoche had never been employed by R.J. Reimers, nor did Reimers make such notations on her checks.

Knoche was charged in Brookings County with one count of forgery, referring to check number 1049: a "payroll" check in the amount of $321.31. This check had been cashed at a White Mart store in Brookings to purchase an electric keyboard.

At trial, testimony, concerning other forged checks for purposes of identification and to show a common scheme, was admitted. A limiting instruction was given to the jury for each witness who testified concerning other bad acts. Four witnesses testified that when Dakota Inn checks were presented at their business, each had requested some identification. The identification shown contained Knoche's photo, driver's license number, and Social Security number. Arnold Dolecheck, manager of White Mart, specifically remembered that the check-casher had a tattoo of "DEB" or "DEBI" on his left forearm. Knoche has a "DEBI" tattoo. Each witness also positively identified Knoche as the one passing the forged checks. Knoche, believing the State had not proven its case, called no witnesses. The jury disagreed and found Knoche guilty of forgery.

Upon motion by Knoche, a new jury was selected for the habitual offender charge. At the start of this proceeding, the trial court, over objection by Knoche, informed the jury that the forgery conviction gave rise to the habitual offender charge. Their job was to determine if Knoche was the same person convicted of eight prior felonies. Following the testimony by jailers, law enforcement personnel, and an employee from the State Crime Laboratory, as well as records of the convictions, the jury found Knoche to be a habitual offender. He was sentenced to 13 years in the state penitentiary.

## DECISION

### I. Prior bad acts were properly admitted.

State sought to admit testimony that Knoche had passed other forged checks during the two days prior to the forgery with which he was charged. Per SDCL 19–12–5, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Knoche objected to admission of these bad acts arguing that they served no other purpose than to portray him as a "bad person."

■ When ruling on the admissibility of other acts testimony, the trial court must determine if the intended purpose for offering the other acts evidence is relevant to some material issue in the case. State v. McDonald, 500 N.W.2d 243, 245 (S.D.1993). Once "deemed relevant, [the evidence] may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Such determination by the trial court will not be disturbed absent an abuse of discretion." State v. McCord, 505 N.W.2d 388, 392 (S.D.1993) (citing State v. Means, 363 N.W.2d 565, 568–69 (S.D.1985)).

■ Whereas Knoche denied he had been passing forged checks, the trial court found that the proffered evidence was relevant and probative as to identity and common plan, two exceptions admissible under SDCL 19–12–5. State v. Werner, 482 N.W.2d 286, 289 (S.D.1992). Finding that the probative value substantially outweighed any prejudicial effect, the evidence was admitted. As an added precaution, the trial court gave limiting instructions to the jury each time evidence of these prior acts was admitted and during the final instructions to the jury. Hence, we find no abuse of discretion.[1]

---

1. In his reply brief, Knoche cites 29 Am.Jur.2d Evidence § 58, pages 90–92, to rebut the State's arguments concerning admission of prior bad acts. This authority begins, "As a general rule ... the court will not take judicial notice of the proceedings or record in another cause ..." This theme is followed throughout the section. We find this connection to judi-

II. *Jury was correctly instructed on the law of the case.*

According to the Indictment, Knoche was accused of violating SDCL 22–39–36: "Any person who, with intent to defraud, falsely makes, completes or alters a written instrument of any kind, *or passes such an instrument is guilty of forgery.*"[2] (Emphasis added.) The jury received the following instruction (# 9):

The elements of the crime as charged in the indictment, each of which the state must prove beyond a reasonable doubt, are:

1. That the defendant at the time and place alleged in the indictment falsely passed a business check of Dakota Inn, Brookings, South Dakota, to White Mart of Brookings, South Dakota in the amount of $321.31, made payable to Robert G. Knoche and bearing the signature of R.J. Reimers.

2. That at the time the check was passed, the defendant knew that the signature of R.J. Reimers was forged.

3. That the defendant did so with the intent to defraud.

 Knoche objected to the instruction claiming it did not contain all the elements of forgery as listed in the indictment and proposed the additional elements of:

* That the defendant knew that said check was not a true and genuine check of said Dakota Inn and the said R.J. Reimers.

* That the defendant knew that the signature on said check was not the signature of R.J. Reimers.

The trial court rejected the proposed instruction due to redundancy. We agree. Under the second element of Instruction # 9, Knoche had to know that the signature of R.J. Reimers was forged. If forged, it obviously did not contain R.J. Reimer's actual

signature and therefore was not a true and genuine check.

 Our stance on this is all too familiar. Jury instructions are sufficient if they correctly state the law and inform the jury. *State v. Burtzlaff,* 493 N.W.2d 1 (S.D.1992); *State v. Martin,* 449 N.W.2d 29, 33 (S.D. 1989); *State v. Cook,* 319 N.W.2d 809, 814 (S.D.1982). Not only must Knoche show error in the instructions, he must also show that the jury probably would have returned a different verdict if his instruction had been given. *State v. Stapleton,* 387 N.W.2d 28 (S.D.1986). He has not done so.

 Because no one testified that Knoche knew the check's signature was not authentic, Knoche claims the elements of fraud were not met. Under oath, Reimers stated that she never wrote a check to Knoche, particularly one labeled "payroll" as Knoche was never an employee of Reimers. Knoche did not dispute this testimony. A jury verdict shall be set aside only where the evidence and the reasonable inferences to be drawn from the evidence do not sustain a rational theory of guilt. *State v. Lewandowski,* 463 N.W.2d 341, 344 (S.D.1990). The evidence was sufficient to uphold the verdict that Knoche passed a forged check. Knoche was not prejudiced by the instructions.

Additionally, Knoche contends the trial court erred in refusing his *falsus in uno*[3] instruction. Citing *State v. Frey,* 440 N.W.2d 721 (S.D.1989), he implies that his theory of the case depends on this instruction. He is very specific in claiming that the veracity of Arnold Dolecheck's testimony is in question. When first interviewed by Detective Stoltenburg, Dolecheck stated that the man who passed the forged check at White Mart had a tattoo on his left forearm. At trial, Dolecheck testified that the tattoo was on Knoche's right forearm, but corrected himself when it was revealed that the tattoo was, in fact, on Knoche's left forearm. Al-

---

cial notice—which did not occur—both nonauthoritative and irrelevant.

**2.** Per this statute, one need not actually falsify a signature on a check to be guilty of forgery. Knoche made no claim that the check was not forged. Hence, the authenticity of the handwriting was not an issue, rather, the *identity* of

the person *passing* forged checks was the jury's concern.

**3.** "If you believe that any witness has knowingly sworn falsely to any material fact in the case, you may reject all of the testimony of any such witness."

though Dolecheck erred in his testimony, there is no indication that he testified falsely. Furthermore, Knoche fails to explain how such testimony impedes his theory of the case—a theory he does not bother to reveal. (In *Frey,* the defendant alleged self defense.)

██ "The burden is on the appellant to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if appellant's instruction had been given." *State v. Grey Owl,* 295 N.W.2d 748, 751 (S.D.1980). The absence of the *falsus in uno* instruction does not constitute error when the essence of the requested instruction is already embodied in other given instructions. *Stapleton,* 387 N.W.2d at 31. Instruction #17 informed jurors about discrepancies in identification, and #20 informed the jury that it was the sole and exclusive judge on the credibility of witnesses. We find no error in the instructions.

III. *Knoche's constitutional rights were not violated when he was ordered to show his tattoo.*

During trial and under strenuous objection by Knoche, State requested that Knoche approach witness Dolecheck and show his tattoo for identification purposes; whereupon, the trial court stated, "If you have a tattoo on either of your arms, please show it." Knoche showed both arms revealing a tattoo on the left forearm.

██ We addressed the privilege against self-incrimination in depth in *State v. Roadifer,* 346 N.W.2d 438 (S.D.1984) (citing *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). The Fifth Amendment of the United States Constitution and Article VI, § 9 of the South Dakota Constitution protect an accused "only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature ..." *Schmerber,* 384 U.S. at 761, 86 S.Ct. at 1830; *Roadifer,* 346 N.W.2d at 440. Real or physical evidence is not covered by the privilege. *Id.* By showing his tattoo to the witness, a tattoo already seen and acknowledged by witness Steve Tietjen (the jail

administrator where Knoche was being held), Knoche merely demonstrated physical characteristics as a source of physical evidence to which observers may, and did, testify. *Roadifer,* 346 N.W.2d at 440. This testimony was relevant. *Cf. State v. Steele,* 510 N.W.2d 661 (S.D.1994) (photos of tattoos held irrelevant where identity was not at issue). The trial court did not err.

IV. *Evidence was sufficient.*

The evidence was sufficient as discussed in Issue II.

V. *Trial court did not err by informing the habitual offender jury of Knoche's underlying forgery conviction.*

Following Knoche's conviction for forgery, State sought to enhance his sentence based on his previous felony convictions. Under SDCL 23A–7–7, Knoche requested and received 12 new jurors for his habitual offender trial. During voir dire, the potential jurors were informed that Knoche had recently been convicted of forgery, but were not informed of the underlying details.

██ Knoche asserts that revealing the forgery conviction poisoned the jurors minds, thus forsaking the rationale in selecting a new jury. He forgets, however, the precedent of *State v. Moves Camp,* 376 N.W.2d 567 (S.D.1985), that the defendant has no constitutional right to a new jury here. The trial court, in its discretion, could have utilized the same jurors from the forgery trial, who had full knowledge of the underlying offense, for the habitual offender trial. Knoche offers no authority to dispute this. Nor do we.

VI. *Knoche did not meet the burden of removing a juror for cause.*

██ During voir dire, when Knoche asked a juror if she could presume him innocent, the juror replied, "I don't think I could." Knoche then sought to have the juror dismissed for cause. SDCL 23A–20–12. The trial court then explained the purpose of the habitual offender proceeding and asked if the sworn juror could be fair, impar-

tial and follow the law as provided in the jury instructions. She answered yes. Knoche made no other attempt on the record to remove this juror for cause. (However, this juror was later removed on a peremptory challenge.) Although a potential juror may express a predetermined opinion during voir dire, once she has declared under oath that she can act fair and impartial, she should not be disqualified as a juror. *State v. Miller*, 429 N.W.2d 26 (S.D.1988); *State v. Hansen*, 407 N.W.2d 217 (S.D.1987). Knoche was not prejudiced by the trial court's proper actions.

## VII. *Trial court did not err in reserving its rulings on motions until after the habitual offender trial.*

■ Prior to trial, Knoche motioned to strike the habitual information "on the grounds that the judgments of conviction do not indicate whether the defendant intelligently waived his constitutional rights or understood the consequences of his plea." Reserving its ruling on this legal issue until after the jury decided the factual issues, the trial court found the prior convictions to be constitutional. Knoche offers no authority requiring the trial court to make such a ruling prior to the habitual offender trial. Failure of a brief to cite supporting authority is deemed a waiver of the issue. *Corbly v. Matheson*, 335 N.W.2d 347 (S.D.1983).

■ *State v. Loop*, 422 N.W.2d 420 (S.D. 1988), provides defendants with two opportunities to have prior convictions set aside, which had been offered for enhancement purposes. Knoche, however, provided no evidence to dissuade the trial court from upholding the jury's decision that he is a career criminal. The trial court did not err by waiting until after the trial to rule Knoche's prior convictions constitutional.

## VIII. *Arraignment on the habitual offender charge prior to the underlying conviction does not constitute reversible error.*

■ Knoche asserts that his arraignment on the habitual offender charge was a nullity because it was not held after his conviction for the underlying charge, and therefore SDCL 23A–7–7 has been violated. SDCL 23A–7–7 states:

> When an habitual offender information has been filed, *after a finding of guilty on the principal offense*, an admission or denial shall be made and, if necessary, an election on a jury trial shall be made on the habitual offender information. Any trial may be had to another jury, at the request of the defendant. (Emphasis added.)

In *Moves Camp*, 376 N.W.2d at 569, we addressed this same issue, reiterating that this statute must be strictly construed. We upheld the conviction, however, because the premature arraignment did not appear to have an effect upon the final result and did not prejudicially affect the rights of the defendant. At his initial appearance, Knoche was informed of his constitutional rights and, thereafter, received a court-appointed attorney who was present at the arraignment for the underlying forgery charge and throughout both trials. Knoche, who had been arraigned on the habitual offender charge prior to the forgery conviction, was again arraigned on the habitual offender charge *after* he had been found guilty of the principal offense. The trial court was well aware of the contents of the Part II Information. As such, these facts do not constitute reversible error. "It was an imperfection but did not preclude appellant from a fair trial." *Moves Camp*, 376 N.W.2d at 569.

## IX. *Trial court did not err in sentencing Knoche.*

■ Following Knoche's habitual offender conviction, the trial court pronounced sentence under SDCL 22–7–8.1, which enhances punishment where prior convictions *do not involve crimes of violence*. (SDCL 22–7–8 upgrades a sentence to life imprisonment if a prior conviction was a crime of violence.) Although the habitual criminal information mistakenly alleged that Knoche had committed a violent crime in Oregon, such error was corrected prior to sentencing. He was sentenced under the corresponding statute and received 13 years, less time served. Knoche

was not prejudiced. *State v. Graycek,* 368 N.W.2d 815, 818 (S.D.1985).

Conviction and sentence affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.