**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William D. OTTO, Defendant and Appellant.**

**No. 18811.**

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1995.

Decided March 22, 1995.

Mark Barnett, Atty. Gen., Wade A. Hubbard, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Thomas M. Keller, Sioux Falls, for defendant and appellant.

PER CURIAM.

William D. Otto ("Otto") appeals his conviction of first-degree burglary on the basis of alleged errors in instructing the jury. We affirm.

## FACTS

While driving in a rural area on the night of December 14, 1993, Otto and Brian L. Leingang ("Leingang") became lost. They stopped at a farm house where they knocked on the door. When no one answered, the two walked around the house, stopping at each door and window. They gained access to the attached garage through an outside door. Leingang then proceeded to the door leading from the garage into the house. In his attempt to open the door, Leingang broke the door knob. Both became frightened and decided to leave.

As they walked out of the garage, the owner of the home, Susan Casanova, drove into the driveway. Otto walked up to Casanova's car to ask her for directions, then the two drove off. One of Casanova's children wrote down the license number of the car in which Otto and Leingang left. When they entered their home, the Casanovas discovered the broken door knob and contacted law enforcement. Otto and Leingang were arrested a short time later. Subsequently, Leingang admitted he had intended to steal from the Casanova house, and pleaded guilty to attempted first-degree burglary.

Otto was charged with first-degree burglary in violation of SDCL 22–32–1.[1] The information, filed against him on January 4, 1994, charged that Otto:

> did commit the offense of **First-degree Burglary, SDCL 22–32–1**, in that William D. Otto did, then and there, willfully and feloniously, enter or remain in an occupied structure, to-wit: a house owned by Susan Casanova, in the nighttime, with intent to commit a crime therein, in violation of SDCL 22–32–1, ...

(Emphasis in original). The case was tried to a jury which convicted Otto of first-degree burglary.

On appeal, Otto raises the following issue:

> WAS IT ERROR TO INSTRUCT THE JURY THAT THE DEFINITION OF "OCCUPIED STRUCTURE" INCLUDES A GARAGE ATTACHED TO A HOUSE RATHER THAN ONLY A HOUSE?

In evaluating his claim, this Court's task is to determine whether, as a whole, the instructions correctly state the law and inform the jury. *State v. Knoche*, 515 N.W.2d 834 (S.D.

---

1. Any person who enters an occupied structure, with intent to commit any crime other than the act of shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, or remains in an occupied structure after forming the intent to commit any crime other than shoplifting or retail theft as described in chapter 22–30A constituting a misdemeanor, is guilty of first degree burglary when:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
(2) The offender is armed with a dangerous weapon; or
(3) The offense is committed in the nighttime. First degree burglary is a Class 2 felony.

1994); *State v. Stetter*, 513 N.W.2d 87 (S.D. 1994). Otto must also demonstrate that the jury probably would have returned a different verdict if the instructions had been given in the manner he proposed. *Knoche*, 515 N.W.2d at 838; *State v. Stapleton*, 387 N.W.2d 28 (S.D.1986).

■ Initially, State contends Otto failed to preserve for appeal his objections to the jury instructions. Ordinarily, "[f]ailure of a court to correctly or fully instruct the jury is not reviewable unless an objection was made or a written instruction correctly stating the law was requested." *State v. Oster*, 495 N.W.2d 305, 312 (S.D.1993) (citation omitted). At the conference during which jury instructions were settled, Otto's attorney made a specific objection to the definition of "occupied structure" contained in Instruction 11 on the basis that it varied from the statutory definition and was not defined by case law, and suggested the use of the definition of the pattern jury instruction which follows the statutory definition.[2] As such, Otto has preserved this argument and it is properly before the Court for review.

The analysis of this issue focuses initially upon the propriety of the instruction given to the jury. SDCL 22–1–2(28) defines "occupied structure" as any structure

(a) Which is the permanent or temporary habitation of any person, whether or not any person is actually present;

(b) Which at the time is specially adapted for the overnight accommodation of any person, whether or not any person is actually present; or

(c) In which at the time any person is present. . . .

The jury instruction at issue is Instruction No. 11, which stated:

The term "occupied structure" as used in these instructions includes any structure which is the permanent or temporary habitation of any person, whether or not any person is actually present, *and also includes structures attached to such occupied structure, and as used in these instructions would include a garage attached to a house.*

(Emphasis added). The italicized language does not appear in the statute or the pattern jury instruction.

Although this Court has not previously considered whether an attached garage falls within the statutory definition of "occupied structure" for purposes of the first-degree burglary statute,[3] other states have considered similar questions. In general, most states which have addressed the issue have concluded that an attached garage falls within the definition of occupied structure or dwelling for purposes of burglary statutes similar to our own. *See Wesolic v. State*, 837 P.2d 130 (Alaska Ct.App.1992) (attached garage which was locked constituted "dwelling," thus entry to steal constituted first-degree burglary); *People v. Cunningham*, 265 Ill.App.3d 3, 202 Ill.Dec. 511, 637 N.E.2d 1247 (1994) (ordinarily attached garage is a "dwelling" because it is part of the structure in which the owner or occupant lives); *State v. Segue*, 637 So.2d 1173 (La.Ct.App.1994) (burglary conviction supported by evidence of entry into attached garage); *State v. Lara*, 92 N.M. 274, 587 P.2d 52 (N.M.Ct.App.1978) (burglary of garage is burglary of dwelling

2. The trial transcript reveals the following objection by trial counsel:

THE COURT: 11 is the one you want?
MR. BLAIR: Right. I would object to that instruction as being not one of the South Dakota pattern jury instructions and includes a definition not defined by South Dakota case law.
Consequently, I would recommend instead that the instruction that is in the pattern jury instructions to the definition of an occupied premise be used instead.
THE COURT: I think without the added language, it might be confusing to the jury as the definition or instruction of habitation does include or would include attached structures such

as a garage; and if not set forth in the instructions, the jury may not have the full knowledge of the law that does apply.

3. We have on one occasion considered the definition of "occupied structure" as an element of first-degree burglary. In *State v. Wilson*, 297 N.W.2d 477, 482–83 (S.D.1980), the Court rejected defendant's argument that a house was not an occupied structure because the owner was on vacation at the time of the burglary. However, since the entry in *Wilson* was into the front door of the house, the Court was not presented with an opportunity to clarify whether a building attached to the house would have also been an occupied structure.

house because the garage was a part of the structure used as living quarters); *State v. Murbach*, 68 Wash.App. 509, 843 P.2d 551, 68 Wash.App. 1041, 843 P.2d 551 (1993) (for purposes of residential burglary statute, definition of "dwelling" includes attached garage). *See also People v. Moreno*, 158 Cal. App.3d 109, 204 Cal.Rptr. 17 (1984); *People v. Jiminez*, 651 P.2d 395 (Colo.1982). *But see People v. Donoho*, 245 Ill.App.3d 938, 186 Ill.Dec. 1, 615 N.E.2d 805 (1993) (defendant charged with separate counts of burglary and residential burglary may have been acquitted of residential burglary had "dwelling" definition been properly limited; expressly refused to consider whether attached garage is part of house as a matter of law under residential burglary statute).

This line of authority suggests that the term "occupied structure" as used in SDCL 22–1–2(28) may properly include a garage attached directly to a house, as the statutory definition focuses on the building in which the owner lives. A garage which is attached to a house logically is all part of the same building, and thus is part of the house or occupied structure. *See Cunningham*, 265 Ill.App.3d 3, 202 Ill.Dec. 511, 637 N.E.2d 1247. Consistent with the cases referred to above, a first-degree burglary conviction may be supported by proof the defendant entered an attached garage with the intent to commit a crime, and it is not necessary to demonstrate entry into the actual house itself. Accepting that premise leads to the conclusion that the jury instruction stating that an attached garage is part of an "occupied structure" correctly states the law.

■ Having determined the instruction itself was proper, the next issue raised by Otto is whether the trial court's definition of "occupied structure" varied impermissibly from the facts charged in the information. In particular, he argues the definition should have been limited to the house itself and not

the attached garage because the information charged that he entered "an occupied structure, *to-wit: a house* owned by Susan Casanova." (Emphasis added.) Otto contends the language of the information referring to only the Casanova *house* mandated the instruction be limited to only the definition of the statute and the State had to prove he actually entered the house itself, not just the garage. Otto relies upon *State v. Sudrala*, 79 S.D. 587, 589, 116 N.W.2d 243, 244 (1962), as authority requiring that "[i]f a necessary allegation is made unnecessarily minute in description [in the information], the proof must satisfy the descriptive as well as main part, since the one is essential to the identity of the other." (Citation omitted).

■ In *Sudrala*, the defendant was charged with selling intoxicating liquor to a minor and the information included the videlicet[4] "to wit: one quart of Stillbrook whiskey." In that case, the only evidence offered by the prosecution focused on "Stillbrook whiskey," and Sudrala's entire defense rested upon an explanation of the inventory of Sudrala's business to establish that he did not possess or sell Stillbrook whiskey. The court reversed the conviction, noting that both sides had focused their proof strictly on the Stillbrook brand of whiskey. It held:

> Since such description was an allegation of material matter to be proved strictly as alleged, it confined the charge against the defendant. The disputed instruction authorized defendant's conviction of a charge different from that alleged in the information. Since he could be tried only on the charge alleged the court in giving this instruction erred to his prejudice.

79 S.D. at 591, 116 N.W.2d at 245. *Accord State v. Brown*, 285 N.W.2d 843 (S.D.1979) (findings of guilt based on sexual acts different from those charged in the videlicet of the information constitute reversible error). Thus, where an information alleges an essen-

---

4. Black's Law Dictionary 1568 (6th ed. 1990) defines the Latin term *videlicet* as follows:
The words "to wit," or "that is to say," so frequently used in pleading, are technically called the *"videlicet"* or *"scilicet;"* and when any fact alleged in pleading is preceded by, or accompanied with these words, such fact is, in the language of the law, said to be "laid under a *videlicet."* The use of the *videlicet* is to point out, particularize, or render more specific that which has been previously stated in general language only; also to explain that which is doubtful or obscure. Its common office is to state time, place, or manner which are of the essence of the matter in issue.

tial element and goes on to further particularize that element, and where the parties' respective cases and proof focus on that particularized element, the jury must be instructed on the element as alleged in the information.

Cases subsequent to *Sudrala* have also focused on whether the defendant has been adequately apprised of the charge so as to be able to present a meaningful defense and, in the event of conviction, plead the conviction as a bar to subsequent prosecution for the same offense. *State v. Frey,* 440 N.W.2d 721 (S.D.1989); *State v. Huber,* 356 N.W.2d 468 (S.D.1984); *State v. Larson,* 294 N.W.2d 801 (S.D.1980); *State v. Barber,* 83 S.D. 289, 158 N.W.2d 870 (S.D.1968). In *Frey,* we rejected defendant's contention that a variance between the indictment charging him with aggravated assault which identified the victims as on-duty law enforcement officers and the jury instructions which did not contain that language constituted reversible error. Likewise, in *Barber,* the Court also rejected a claim that the specific age of the victim could not vary between the information and jury instructions because there the State needed only to prove the victim was under 18 years of age; it did not matter if there was conflicting evidence on whether she was 15 or 13. Variances in only the characteristics of the victims have been insufficient to merit reversal.

Otto contends that as to the essential element of "occupied structure" the use of the videlicet "a house owned by Susan Casanova" in the information required the State to prove that it was the actual house that he entered. However, having concluded previously that an attached garage is necessarily a part of a house and, thus, an "occupied structure," the variance noted by Otto lacks legal significance. The point of the videlicet is to particularize an allegation, and here it was used to identify the occupied structure, i.e. house, as belonging to Susan Casanova. Consequently, Otto's argument must fail.

Otto has raised other challenges to his conviction, including a general challenge to the jury instructions as a whole, jury confusion, and failure to prove intent. We have considered these arguments and find that they are without merit.

Affirmed.

MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., participating.