#29159-a-DG
**2021 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

SEAN LEADER CHARGE,                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
MELLETTE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Retired Judge

\* \* \* \*

JASON R. RAVNSBORG
Attorney General

BRIGID C. HOFFMAN
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff and
                                          appellee.


ROBERT T. KONRAD
Pierre, South Dakota                      Attorney for defendant and
                                          appellant.

\* \* \* \*

ARGUED
OCTOBER 6, 2020
OPINION FILED **01/06/21**

#29159

GILBERTSON, Retired Chief Justice

[¶1.]     A jury found Sean Leader Charge (Leader Charge) guilty of sexual contact with a child under sixteen.  During voir dire, Leader Charge challenged a potential juror for cause.  The trial court denied the challenge, and the juror was placed on the jury.  After the trial, Leader Charge moved for a new trial claiming he was convicted by a biased jury.  The court denied the motion.  Leader Charge appeals claiming the trial court abused its discretion by failing to remove the potential juror for cause.  We affirm the trial court's decision.

## Background

[¶2.]     In May 2018, the State charged Leader Charge with two counts of sexual contact with a child under sixteen.  The victim is the younger sister of Leader Charge's girlfriend/mother of his children, T.M.  On two occasions, when T.M. was out of the house, Leader Charge rubbed the victim's vaginal area over her clothing while they sat on the couch.

[¶3.]     On April 29, 2019, a jury trial commenced in White River, South Dakota.  Donna Brandis (Brandis) was a potential juror for the case.  During voir dire, Brandis, the court, and Leader Charge's counsel, participated in the following exchange:

> COUNSEL: Is there anybody who has, you know, a plane ticket to Maui tomorrow morning, you know, some other pressing reason that makes you think, you know, I just cannot sit here in this courtroom for the next day and a half, two days possibly and not have that on my mind? . . .
> BRANDIS: I'm the city finance officer and I am the only person in my office.
> COUNSEL: Okay.
> BRANDIS: I got water bills, payroll.  I know both sides of the family and I just don't feel I can be a fair juror.

-1-

COUNSEL: So it sounds like the city of White River is going to stop if you're --

BRANDIS: Yeah, it will. These people won't get their water bills.

COUNSEL: Well, you know, don't say that. They might ask me to keep you all week. But it sounds like it would put you quite a bit behind in your job?

BRANDIS: Yes, it would, sir.

COUNSEL: And in addition, something we haven't really gotten to yet but you said you know the family?

BRANDIS: Yeah. I deal with them when they come in my office.

COUNSEL: Is there anything about your interaction with the family that you think would make it difficult for you to be here today?

BRANDIS: The victim comes through my alley because I live right across from the high school. She goes to the playground and I visit with her. I just don't feel I can do this.

COUNSEL: You don't think you could be fair --

BRANDIS: No.

COUNSEL: -- and judge this case based just on what you hear here today?

BRANDIS: Right.

COUNSEL: I guess I would ask that Ms. Brandis be excused, Your Honor.

COURT: Ma'am, I typically don't grant excuses for job-related reasons. Obviously, everyone is busy and I appreciate that there are time frames to meet. We've got people here that are in the middle of calving, important issues. There's always an excuse for that. I guess what my question really is[,] is we are trying to find a jury that can be fair and impartial and judge the facts of the case based solely on what comes in through the evidence presented here in court. I know that a job like you have, you're the only one. It would certainly be inconvenient for you. But you understand that the Defendant and the State are entitled to have a fair and impartial jury and is there any reason why you feel you cannot listen to the evidence here --

BRANDIS: No --

COURT: -- and present a fair verdict?

BRANDIS: -- I can't.

COURT: I'm going to deny the request to excuse then at this point. Thank you.

COUNSEL: Good try . . . . [Leader Charge's counsel continued to question jurors about work related conflicts.]

#29159

[¶4.]     The jury pool consisted of ninety-five individuals, the parties went through sixty-six, and the court dismissed nineteen for cause.[1]  Leader Charge's counsel passed the jury panel, containing Brandis, for cause.  Each party had ten peremptory challenges.  Neither party struck Brandis, and she was seated as a trial juror.  Each attorney confirmed his satisfaction with the panel.  After the close of evidence and a two-and-a-half-hour deliberation, the jury returned a verdict of guilty on both counts.

[¶5.]     Leader Charge filed a motion for a new trial on the grounds of jury misconduct and irregularity.  At the hearing, Natasha Bear Heels (Bear Heels), who worked in the same building as Brandis and knows Leader Charge's mother, testified that a year before the trial she discussed the case with Brandis on a weekly basis.  According to Bear Heels, Brandis expressed that the allegations were phony, but after the trial commenced, Brandis refused to speak with her.  T.M. also testified at the hearing.  She relayed that a month before trial, she had spoken with Brandis briefly about the case and Brandis had wished her luck and characterized the case as "a bunch of shit."[2]  Brandis confirmed that the conversation before trial with T.M. had occurred.  However, she claimed that she did not speak with T.M during trial.  Brandis also claims that she never spoke to Bear Heels about the case.

---

1.     Prior to questioning Brandis, the court advised, "We are cycling through a number [of jurors] here so I may have to get tougher on who I excuse."  Due to White River's small population, many prospective jurors taught, were related to, or knew Leader Charge, his family, or the victim and her family.

2.     T.M. also claims that Brandis mouthed, "I don't want to do this" while shaking her head in T.M.'s direction during trial.  However, Brandis denied that this occurred.

She stated that she only considered evidence presented at trial and, although she could not remember specific questions, she stated that she answered each voir dire question honestly. She also affirmed that she knew Leader Charge, but not personally, and that she did not know the victim.[3]

[¶6.] The trial court denied Leader Charge's motion for a new trial holding that Leader Charge failed to show misconduct occurred as a result of the juror's prior knowledge of the case or information being brought into deliberations. Further, the court determined that any presumption of prejudice as to knowledge of the case, a juror's ability to be fair and impartial, or inappropriate contacts between a juror and a witness were rebutted and shown to be harmless.

[¶7.] Leader Charge raises the sole issue on appeal of whether the trial court abused its discretion by denying the removal of juror Brandis for cause.

## Analysis and Decision

[¶8.] This Court reviews a trial court's denial of excusing a juror for cause under an abuse of discretion standard. *State v. Verhoef*, 2001 S.D. 58, ¶ 12, 627 N.W.2d 437, 440. "The trial court has broad discretion in determining juror qualification." *State v. Daniel*, 2000 S.D. 18, ¶ 16, 606 N.W.2d 532, 535 (quoting *State v. Garza*, 1997 S.D. 54, ¶ 8, 563 N.W.2d 406, 408). "However, '[a]s a policy matter, when challenges of venirepersons for actual bias arise, trial courts would be wise to err on the side of disqualification.'" *Id.* (quoting *State v. Blue Thunder*, 466 N.W.2d 613, 620 (S.D. 1991)). "When the evidence of each juror is contradictory in

---

3. The jury's bailiff also testified that he did not observe any juror making inappropriate contacts, but he acknowledged that he was unable to continuously watch every juror.

itself, and is subject to more than one construction, a finding by the trial court either way upon the challenge is conclusive on appeal." *State v. Rhines*, 1996 S.D. 55, ¶ 52, 548 N.W.2d 415, 432 (quoting *State v. Flack*, 77 S.D. 176, 181, 89 N.W.2d 30, 32 (1958)).

[¶9.]        The United States Constitution and the South Dakota Constitution guarantee an accused the right to an impartial jury.  U.S. Const. amend. VI; S.D. Const. art. VI, § 7.  "The purpose of '[v]oir dire examination is to enable counsel to determine whether any prospective jurors . . . are possessed of beliefs which would cause them to be biased in such a manner as to prevent his client from obtaining a fair and impartial trial.'"  *Daniel*, 2000 S.D. 18, ¶ 11, 606 N.W.2d at 534 (quoting *People v. Mackey*, 521 P.2d 910, 913 (1974)).  "The trial court has the primary responsibility to make certain that a fair and impartial jury has been selected for a defendant's trial."  *Verhoef*, 2001 S.D. 58, ¶ 12, 627 N.W.2d at 440 (citing *State v. Etzkorn*, 1996 S.D. 99, ¶ 8, 552 N.W.2d 824, 828, *abrogated on other grounds by Verhoef*, 2001 S.D. 58, 627 N.W.2d 437).  Under SDCL 23A-20-13.1, challenges for cause may be taken on several grounds, including the following:

> ***
>
> (11) The prospective juror has knowledge of some or all of the material facts of the case and has an unqualified opinion or belief as to the merits of the case.
>
> (12) The prospective juror has a state of mind evincing enmity against, or bias to or against . . . the defendant [or] . . . the alleged victim . . . in the case.
>
> ***
>
> (21) A challenge for actual bias showing the existence of a state of mind on the part of a prospective juror, in reference to the

> case or to the defendant [or] . . . alleged victim . . . that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially, without prejudice to the substantial rights of the party challenging.

[¶10.] Leader Charge argues that the trial court abused its discretion by not excusing Brandis for cause under sections 11, 12, or 21 of SDCL 23A-20-13.1. He claims the court asked a confusing clarification question, and as a result, Brandis never affirmed that she could act impartially, and in fact, stated three times that she could not be impartial. Leader Charge contends the trial court's failure to excuse Brandis resulted in a biased juror serving on the jury that returned a guilty verdict.

[¶11.] Leader Charge argues *Etzkorn*, is analogous to the case before this Court as Brandis stated several times that she could not be impartial. 1996 S.D. 99, 552 N.W.2d 824. In *Etzkorn*, this Court held that the trial court erred by failing to dismiss two prospective jurors for cause in a driving under the influence (DUI) prosecution. *Id.* ¶ 13, 552 N.W.2d at 829. The first juror stated she was unable to presume the defendant innocent due to her ex-boyfriend's DUI experiences. *Id.* ¶ 3, 552 N.W.2d at 825-26. The defendant challenged the juror for cause, after which the court asked the potential juror whether she could follow the law as instructed. *Id.* After multiple questions and some confusion, she answered "Yes." *Id.* The court denied the defendant's challenge for cause. The second juror claimed she was unable to be impartial due to her ex-husband being an alcoholic and having been arrested for five DUIs. *Id.* ¶ 4, 552 N.W.2d at 827. The defendant challenged the juror for cause, and the court asked this prospective juror if she could follow the law and listen to the evidence, to which she answered "Yes." *Id.* It then denied the

defendant's challenge for cause. *Id.* This Court, in its analysis, focused on the fact that both jurors were asked fifteen times if they could presume the defendant innocent, but neither juror ever acknowledged that she could apply the presumption of innocence. *Id.* ¶¶ 10-13, 552 N.W.2d at 828-29. The Court held the trial court's decision to forgo removing the jurors for cause was an error. *Id.* ¶ 13, 552 N.W.2d at 828-29.

[¶12.] The State counters Leader Charge's argument with *State v. Moeller*, 2000 S.D. 122, 616 N.W.2d 424 and *State v. Knoche*, 515 N.W.2d 834 (S.D. 1994), arguing that Brandis's questioning reveals that she *could* be fair and impartial. It claims the final question posed by the trial court was, ". . . [I]s there any reason why you feel you cannot listen to the evidence here and present a fair verdict?" The State claims Brandis answered, "No, I can't."

[¶13.] In *Moeller*, the trial court and the parties questioned prospective jurors at length to determine whether the jurors were biased toward or against imposing the death penalty. 2000 S.D. 122, ¶¶ 32-42, 616 N.W.2d at 436-40. Several jurors initially showed a bias toward imposing the death penalty; but after the trial court clarified the trial's procedure, each juror stated that he or she would listen to the evidence presented and then make a determination. *Id.* This Court held, after examining the entire voir dire proceeding, the trial court did not abuse its discretion by denying the defendant's motion to remove the jurors for cause. *Id.* ¶ 47, 616 N.W.2d at 440-41.

[¶14.] The State argues *Knoche* involved a similar exchange to the one that occurred in this case. 515 N.W.2d at 839-40. In *Knoche*, the potential juror initially

claimed she was unable to presume the defendant innocent. *Id.* The court then asked if she could be fair, impartial, and follow the law to which she then responded, "yes." *Id.* This Court upheld the trial court's decision to deny the challenge for cause because "[a]lthough a potential juror may express a predetermined opinion during voir dire, once she has declared under oath that she can act fair and impartial, she should not be disqualified as a juror." *Id.* at 840.

[¶15.] The State argues that like the jurors in *Moeller* and *Knoche*, Brandis initially expressed doubts about her ability to be impartial, but after the court explained what was required of her as a juror, she affirmed her ability to be impartial. Leader Charge responds that unlike in *Moeller and Knoche*, the trial court did *not* engage in a lengthy discussion with Brandis to confirm that she could be impartial; rather, the court asked a two-part question that can be construed as Brandis expressing an inability to be impartial. Leader Charge further contends that the State and trial court incorrectly characterized Brandis's conflict as a work-related, not a bias, issue.

[¶16.] Our "[d]etermination of a juror's qualifications must be based upon the whole voir dire examination; 'single isolated responses are not determinative.'" *State v. Darby*, 1996 S.D. 127, ¶ 34, 556 N.W.2d 311, 320 (quoting *State v. Hansen*, 407 N.W.2d 217, 220 (S.D. 1987)). The exchange at issue begins with Leader Charge's counsel asking the jury panel if anyone has a conflict with the anticipated timeframe of the trial. Brandis raised her hand and began discussing her work-related issue. She then stated that she knew both parties, but she did not indicate a bias toward either. It is not surprising that she knew both parties because White

River is a town with a population of approximately 500. The voir dire transcript reveals other instances in which the trial court confronted disclosures by jurors who stated they were aware of either party or the parties' families. After Brandis stated that she was aware of the parties and could not be impartial, the court began discussing her work-related conflicts and explaining what is expected of her as a juror. We believe the better view of the record shows the trial court asking Brandis if she could listen to all the evidence presented and reach a fair verdict; to which, she responded that she could not think of a reason why she could not. After the court denied the challenge, Leader Charge's counsel said, "Good try." The fact that counsel posed no further questions to Brandis and raised no further objections supports the trial court's apparent interpretation of Brandis's response. Counsel then continued questioning other prospective jurors about work-related issues.

[¶17.]     Later in the voir dire process, counsel for Leader Charge asked if anyone knew the victim, using the victim's name for the first time. While multiple prospective jurors raised their hands and were questioned, Brandis did not, and counsel did not single her out for further questioning. Counsel went on to ask if anyone knew T.M. and various prospective jurors, but not Brandis, raised their hands and were questioned. Prior to wrapping up, counsel again asked if anyone was incapable of viewing the evidence and remaining unbiased. Brandis remained silent. Both parties passed the jury for cause and later affirmed their satisfaction with the selected panel.

[¶18.]     In examining the entire voir dire proceeding, while Brandis knew the parties, the trial court's decision that she could remain impartial is supported by

the record. Her answer to the court's question can be construed as affirming her ability to be impartial and fairly consider the evidence presented. Further, she apparently did not respond to subsequent questions about T.M., the victim, or her ability to weigh the evidence. This Court does not require prospective jurors to have *no* prior knowledge of the case or the parties; rather, they must show an ability to be impartial and unbiased and weigh only the evidence presented at trial. *State v. Owens*, 2002 S.D. 42, ¶¶ 30-31, 643 N.W.2d 735, 745-46 (citations omitted) (A defendant is not entitled to "a jury that has absolutely no prior knowledge of the facts of the case." However, "a juror must be able to set aside preconceptions and judge the case on the facts presented at trial under the instructions given by the trial court."); *see also Verhoef*, 2001 S.D. 58, ¶ 13, 627 N.W.2d at 440 (holding that the trial court did not abuse its discretion by declining to excuse a juror for cause when the juror was acquainted with the defendant, victim, and victim's grandmother).

[¶19.] Therefore, under the abuse of discretion standard, we affirm the trial court's decision to deny Leader Charge's motion to strike juror Brandis for cause. Because "the determination is essentially one of credibility, and therefore largely one of demeanor[,] . . . the trial court's resolution of such questions is entitled . . . to 'special deference.'" *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S. Ct. 2885, 2892, 81 L. Ed. 2d 847 (1984) (citation omitted). As no error occurred, we need not analyze Leader Charge's argument that the error was prejudicial.

## Conclusion

[¶20.] After reviewing the entire voir dire proceeding, the trial court did not abuse its discretion in denying Leader Charge's motion to remove juror Brandis for cause. Accordingly, we affirm.

[¶21.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

[¶22.] MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.