2000 SD 18

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Thomas Aduak DANIEL, Defendant and Appellant.**

No. 20960.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1999.

Decided Feb. 9, 2000.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, for plaintiff and appellee.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendant and appellant.

PER CURIAM.

[¶ 1.] Thomas Aduak Daniel appeals from a judgment of conviction and sentence, raising issues involving voir dire and jury selection. Because the record reveals no prejudice to Daniel, we affirm.

## FACTS AND PROCEDURE

[¶ 2.] On July 4, 1998, 19–year–old Chris Dyer worked the night shift at the Sioux Falls post office, taking a break from his work at 3:00 a.m. During his break he sat in his car, parked in a nearby grocery store parking lot, and waited for a friend who was to meet him and pick up some belongings left earlier with Dyer. Around 3:15 a.m., 28–year–old Daniel approached the car and asked Dyer for a ride. Dyer consented and drove Daniel two blocks to an apartment parking lot where Daniel produced a knife and threatened Dyer. Daniel instructed Dyer to exit the vehicle or he would cut out Dyer's eyes. Dyer·ran to the post office and called the police. Daniel left in Dyer's car.

[¶ 3.] According to testimony at Daniel's trial on charges stemming from this encounter, Daniel claimed the two talked and smoked marijuana in Dyer's car and that he did not notice he was sitting on a knife until he exited the vehicle at the apartment parking lot. He claimed he showed Dyer the knife he found on the seat, stating he had been sitting on it and suggested Dyer put it someplace else so no one would hurt themselves. At that point, according to Daniel, Dyer jumped out of the car and ran away. Daniel stated he· drove around looking for Dyer in order to return his vehicle to him but could not find him in that two-block area and in his search, drove 150 miles south of Sioux Falls on I–29 to Missouri Valley, Iowa. There he filled Dyer's car with gas and drove off without paying.

[¶ 4.] Daniel was apprehended a short time later by an Iowa highway patrol officer and told the officer he was driving to Utah. It was determined the car was stolen. Daniel was taken to Logan, Iowa where he was interviewed by a Sioux Falls police detective on July 7. The detective identified himself and read Daniel his· Miranda rights. Daniel admitted to the detective that he had taken a knife from his home and produced the knife in Dyer's car, telling Dyer to "get out or I'll stab your eyes out." He also admitted he had stolen the vehicle and had immediately left Sioux Falls driving southbound on I–29. He stated he had earlier been slipped some LSD unbeknownst to him by a friend and that he was paranoid and did not know what he was doing. when he took the car out of state.

[¶ 5.] On July 8, 1998, a Minnehaha County grand jury returned an indictment charging Daniel with first degree robbery and aggravated assault. On July 13, Daniel was arraigned and entered a plea of not guilty. On September 14, he appeared before the trial court and requested a jury ·trial. Three months later, he entered a guilty plea on the aggravated assault charge. Following substantial discussion with Daniel, the trial court refused to accept the plea and ordered the case to. trial.

[¶ 6.] A jury trial was held December 21–22, 1998 and the jury returned guilty verdicts against Daniel on both charges. The court accepted the verdicts and sentenced Daniel to concurrent sentences of 12½ years on the robbery conviction and 7½ years on the assault conviction.

[¶ 7.] Daniel appeals raising the following issues:

Did the trial court abuse its discretion in conducting voir dire.

Did the trial court abuse its discretion in refusing to remove a juror for cause.

## ANALYSIS AND DECISION

[¶ 8.] **Did the trial court abuse its discretion in conducting voir dire.**

[¶ 9.] SDCL 23A–20–6 permits the trial court to conduct a general voir dire examination of the prospective jurors prior to examination by the defense and prosecution. The statute provides:

The defense attorney or the defendant, if appearing pro se, and the prosecuting attorney shall conduct examination of prospective jurors. *Prior to the examination the court may conduct a general examination of the prospective jurors.* The court may in its discretion allow examination of one or more jurors apart from the other jurors.

(emphasis added).

[¶ 10.] Here, the trial court conducted an examination of the prospective jurors covering topics that included, *inter alia,* courtroom procedure, the ability to follow the law provided by the trial court, knowledge of the parties, jurors' duty as factfinders, presumption of innocence and the burden of proof. Daniel claims the trial court abused its discretion by going beyond the scope of this general examination and questioning jurors regarding specific facts of the case, pretrial publicity, and racial bias. In particular, Daniel, a black South African man, claims the trial court's examination impermissibly intruded on his presentation of his theory of the case which involved cultural differences in perceptions of cross-racial situations based on his South African upbringing and experiences. He claims such issues should have been left for defense counsel to pursue with potential jurors on voir dire and that the lack of notice from the trial court regarding its examination on such issues precluded his advance objection.

[¶ 11.] Jurisdictions vary considerably in the procedures to be followed in conducting voir dire examination. *See* 3 American Bar Association Standards for Criminal Justice 2d, *Trial by Jury* § 15–2.4C (1986). In South Dakota, voir dire examination of the prospective jurors is largely reserved to the parties' attorneys. SDCL 23A–20–6. Although the extent of the general examination permitted by the trial court is undefined by statute or prior caselaw of this Court, the trial court's discretion in conducting voir dire is limited by the right of the parties to have an impartial jury. *See generally* 17 AmJur2d, *Jury* § 200 (1995). The purpose of "[v]oir dire examination is to enable counsel to determine whether any prospective jurors '. . . are possessed of beliefs which would cause them to be biased in such a manner as to prevent his client from obtaining a fair and impartial trial.'" *People v. Mackey,* 185 Colo. 24, 521 P.2d 910, 913 (1974) (examining a statute similar to SDCL 23A–20–6).

This process, by which both the defense and the prosecution try to eliminate those prospective jurors who appear sympathetic to the opposition or at least unsympathetic to their side, is commonly perceived as a very important part of trial procedure. It 'can turn out to be a battle of wits and maneuvering more dramatic than the trial itself. Many attorneys believe that trials are frequently won or lost during this process.'

Wayne R. LaFave & Jerold H. Israel, 5 Criminal Procedure 2d § 22.3(a) (1999) (quoting J. Van Dyke, Jury Selection Procedures 139 (1977)).

[¶ 12.] Under our statutory limitations, and after review of the trial transcript in this case, it appears the trial court exceeded the scope of a general examination in questioning the prospective jurors. However, the record demonstrates no prejudice to Daniel by this examination. The evidence against Daniel in this case was overwhelming; he was caught driving the victim's stolen vehicle and his confession to the Sioux Falls police detective three days later mimics the victim's rendition of the facts. Because the abuse of discretion did not result in prejudice to Daniel, we will not reverse.

[¶ 13.] Also under this issue, Daniel claims the trial court abused its discretion by examining the potential jurors using statements similar to those used by this same judge as preliminary jury instructions in the trial of *State v. Nelson*, 1998 SD 124, 587 N.W.2d 439.* Daniel claims the court's use of these instructions in voir dire, in effect, provided the jury with unsettled instructions. Absent agreement between the court and counsel, voir dire of the jury is not the time for premature presentation of evidence, nor attempts at pre-instruction by attorneys or the trial court. *Rousseau v. West Coast House Movers*, 256 Cal.App.2d 878, 64 Cal.Rptr. 655, 660 (1967). However, as there is no showing of prejudice to Daniel under this record, there is no reversible error.

[¶ 14.] **Did the trial court abuse its discretion in refusing to remove a juror for cause.**

[¶ 15.] Daniel used a peremptory challenge to remove Juror No. 52H and claims the trial court abused its discretion in refusing to remove this juror for cause. It was discovered during voir dire examination that this juror owned a convenience store that had been robbed by a black man. The juror was a witness in the prosecution of that defendant. When asked how being a witness in that case would affect him in the present case, this juror responded:

> Well, I guess in all honesty, my impartiality is a little subject because of the fact that in the convenience store business we are constantly in fear of our lives literally. When it does finally happen, it shakes you up pretty good. To be impartial, yes I don't have a problem being impartial. In fact, Cornell Burnett, the person who robbed me was black. I don't have any problem with that being the defendant here is black. But in my business, these are the kind of people that we want off the streets. I'm just trying to be honest.

Although this juror reiterated his ability to be impartial in this case, he also informed the court in response to questioning by the defense that he would not have the "same level of impartiality" in a robbery case, the type of case at issue here, as he would in a DWI case.

[¶ 16.] "The trial court has broad discretion in determining juror qualification. Actual, material prejudice resulting from the trial court's refusal to excuse a juror for cause must be shown for a reversal." *State v. Garza*, 1997 SD 54, ¶ 8, 563 N.W.2d 406 (citing *State v. Hansen*, 407 N.W.2d 217, 220 (S.D.1987)). However, "[a]s a policy matter, when challenges of venirepersons for actual bias arise, trial courts would be wise to err on the side of disqualification." *State v. Blue Thunder*, 466 N.W.2d 613, 620 (S.D.1991).

[¶ 17.] It is not error alone that reverses judgments of convictions of crime in this state but error plus injury. SDCL 23A–44–14. Potential juror No. 52H was removed by peremptory challenge and did not sit as a juror. There is no showing that those who did sit and rendered a verdict did so in an improper manner. *Garza*, 1997 SD 54 at ¶¶ 14–16, 563 N.W.2d at 409–10. Because there is no prejudice established under this record, we affirm.

[¶ 18.] MILLER, Chief Justice, SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, participating.

---

* He does not claim that final substantive instructions were not given to the jury which was one of the reasons for reversal in *Nelson*.