2001 SD 58

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Troy Martin VERHOEF, Defendant and Appellant.**

Nos. 21480, 21481, 21482, 21483, 21484.

Supreme Court of South Dakota.

Considered on Briefs Jan. 8, 2001.

Decided May 16, 2001.

Mark Barnett, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, SD, Attorneys for plaintiff and appellee.

Philip R. Parent, Madison, SD, Attorney for defendant and appellant.

PER CURIAM

[¶ 1.] Troy Martin Verhoef appeals from a judgment of conviction on five counts of sexual contact with a child under sixteen, SDCL 22–22–7. We affirm.

FACTS

[¶ 2.] On November 18, 1999, eleven-year-old AV was "tired of it" and told her mother that her father, Verhoef, made her touch his penis and rub it up and down until yellow stuff he called sperm came out. He did so because "mom wasn't helping him" and always asked AV "Do you think I'm a bad father?" when finished. The incidents made her afraid and she worried that "I wouldn't be able to see my daddy" if she did not do what he asked. The encounters mainly took place when Verhoef had been drinking and using pornography. They took place in the family home and that of a friend when AV's mother was working nights.

[¶ 3.] According to AV, the first incident occurred in February 1999 within two weeks of their move to Madison on Valentine's Day. AV thought that her mother was at work at a casino at this time. While it was established that her mother did not begin working at the casino until March 14, 1999, she did work nights at a restaurant/bar in February.

[¶ 4.] AV testified that in March 1999, Verhoef awakened her, undressed her, and had her "help him" ejaculate in the filled bathtub he had them sit in. More touching took place in April 1999, during AV's softball practice. The same kind of touching occurred in October 1999 a few days before a meeting between AV and her school counselor. The final incident occurred on November 18, 1999 when Verhoef crawled into bed with AV and tried to force her hand "down there." She resisted touching his penis with her hand, although it did touch her leg.

[¶ 5.] At Verhoef's jury trial, the jury was selected by the "strike down" method provided in SDCL 23A–20–3. Thirty-two potential jurors were questioned. Of these, twenty had heard of the case. Verhoef did not challenge these for cause on this basis, although three were excused after he challenged them for cause for other reasons.

[¶ 6.] Potential juror Orton testified she knew AV from Sunday school. She also knew Verhoef and his mother. She considered herself friends "with both sides." However she stated she would try to set her personal feelings aside and be fair and impartial.

[¶ 7.] Potential juror Muellenberg testified she had strong feelings about sexual abuse of children. She stated she "would make a big effort" to impartially act as a juror but "I'm not a hundred percent sure that I can."

[¶ 8.] Verhoef challenged both Orton and Muellenberg for cause. The trial court denied both challenges. Thereafter Verhoef removed both by use of peremptory challenges. Because a strike down

method was used, Verhoef exercised all his peremptory challenges.

## ISSUE ONE

**[¶ 9.] Did the trial court err by denying Verhoef's request to remove Orton and Muellenberg for cause?**

[¶ 10.] Verhoef claims he suffered actual prejudice since he utilized peremptory challenges on Orton and Muellenberg that could have been used on other people impaneled on the jury.

[¶ 11.] Pursuant to SDCL 23A–20–13.1, challenges for cause may be taken on the following grounds:

\* \* \*

(11) The prospective juror has knowledge of some or all of the material facts of the case, and has an unqualified opinion or belief as to the merits of the case.

(12) The prospective juror has a state of mind evincing enmity against, or bias to or against an attorney, the defendant, the prosecution, the alleged victim or complainant in the case.

\* \* \*

(21) A challenge for actual bias showing the existence of a state of mind on the part of a prospective juror, in reference to the case or to the defendant, the prosecution, alleged victim, or complainant that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially, without prejudice to the substantial rights of the party challenging.

■ [¶ 12.] The trial court has the primary responsibility to make certain that a fair and impartial jury has been selected for a defendant's trial. *State v. Etzkorn,* 1996 SD 99, 552 N.W.2d 824.

The mere expression of a predetermined opinion regarding guilt during voir dire does not disqualify a juror per se. *State v. Hansen,* 407 N.W.2d 217, 220 (S.D. 1987); *[State v.] Muetze,* 368 N.W.2d at [575] 585 [ (S.D.1985) ]. A potential juror should be excused for cause if that juror is unable to set aside preconceptions and render an impartial verdict. *Hansen,* 407 N.W.2d at 220; *Muetze,* 368 N.W.2d at 585.

*State v. Darby,* 1996 SD 127, ¶ 34, 556 N.W.2d 311, 320. A trial court has broad discretion in determining juror disqualification. *State v. Daniel,* 2000 SD 18, 606 N.W.2d 532. To reverse a trial court's decision to refuse to excuse a juror for cause, actual, material prejudice must be shown. *Id.*

■ [¶ 13.] A review of the voir dire of Orton and Muellenberg shows no abuse of discretion in the trial court's refusing to excuse them for cause. While Orton had heard about the case and was acquainted with Verhoef, AV and her grandmother, she said that she could be "fair and impartial as far as the case." Similarly, Muellenberg, who had strong feelings about the type of case, distinctly said that she did not know the facts of the case and had not made up her mind about it. "Although a potential juror may express a predetermined opinion during voir dire, once she has declared under oath that she can act fair and impartial, she should not be disqualified as a juror." *State v. Knoche,* 515 N.W.2d 834, 840 (S.D.1994). Consequently, the trial court did not abuse its discretion in refusing to remove these two jurors for cause.

■ [¶ 14.] In addition to failing to prove error concerning Orton and Muellenberg, Verhoef failed to prove prejudice. *State v. Daniel,* 2000 SD 18 at ¶ 17, 606 N.W.2d at 535. To prevail, he must establish both. In *Etzkorn,* this Court held that the trial court erred when it improperly

failed to excuse two potential jurors for cause for failure to set aside preconceptions about the case. Although they were subsequently removed by the defendant by peremptory challenges, we held constitutional prejudice existed because if these jurors had been properly excused for cause, Etzkorn could have used his final two peremptories on other potential jurors he did not want to sit on his case.

[¶ 15.] However, in *Darby*, we affirmed where the defendant was forced to use peremptory challenges to excuse four potential jurors when the trial court refused to excuse them for cause. We did so because we found no abuse of discretion by the trial court in its denial of an excuse for cause but moreover because "Darby has failed to show the twelve jurors who actually heard the evidence and convicted him based upon that evidence were not impartial." 1996 SD 127 at ¶ 43, 556 N.W.2d at 322.

[¶ 16.] Subsequently in *Daniel* the trial court refused to excuse for cause a potential juror who arguably admitted he could not be impartial. However that issue was deemed not to be determinative because:

> It is not error alone that reverses judgments of convictions of crime in this state but error plus injury. SDCL 23A–44–14. Potential juror No 52H was removed by peremptory challenge and did not sit as a juror. There is no showing that those who did sit and rendered a verdict did so in an improper manner. *[State v.] Garza* 1997 SD 54 at ¶ 14–16, 563 N.W.2d {406} at 409–10 [ (1997) ]. Because there is no prejudice established under this record, we affirm.

2000 SD 18 at ¶ 17, 606 N.W.2d at 535.

[¶ 17.] Our most recent examination of the issue is *State v. Moeller*, 2000 SD 122, 616 N.W.2d 424. While acknowledging our prior decision in *Etzkorn*, we declared:

> We find no just cause that would have warranted the removal of any of the challenged jurors. However, were we to find the trial court erred in failing to remove a potential juror for cause, we would still reject Moeller's argument that the failure to remove the challenged jurors forced him to exhaust his peremptory challenges. The United States Supreme Court recently held that if a defendant elects to cure the erroneous refusal of a trial judge to dismiss a potential juror for cause by exercising a peremptory challenge, and is subsequently convicted by a jury on which no biased juror sat, he has not been deprived of any right under the Federal Rules of Criminal Procedure or the Constitution. *United States v. Martinez–Salazar*, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000).

2000 SD 122 at ¶ 47 n. 8, 616 N.W.2d at 441 n. 8. The foundation of the Court's ruling in *Martinez–Salazar* was that peremptory challenges to prospective jurors are not by themselves constitutional issues but rather "are one means to achieve the constitutionally required end of an impartial jury." 528 U.S. at 307, 120 S.Ct. at 777, 145 L.Ed.2d at 798.[1]

[¶ 18.] Under the facts before us, *Martinez–Salazar* clearly sets aside *Etzkorn* as to any claim of a denial of a federal constitutional right, be it due process or Sixth Amendment trial rights. *Moeller, Id.* Although South Dakota constitutional and statutory rights were a further basis for the holding in *Etzkorn*, Verhoef offers no

---

1. In *Martinez–Salazar*, the government on appeal conceded that failure of the trial court to remove the potential juror for cause was an abuse of discretion. 528 U.S. at 309, 120 S.Ct. at 778, 145 L.Ed.2d at 799.

convincing argument why these state rights are to be interpreted in a different manner than the corresponding federal constitutional guarantees. Based on the above analysis, we hold that *Moeller, Daniel and Darby* now set forth the applicable law on this issue in this state.

[¶ 19.] Verhoef has failed to show that the twelve jurors who heard the evidence and convicted him based upon that evidence were not impartial. *State v. Darby,* 1996 SD 127 at ¶ 43, 556 N.W.2d at 321. While he points to eight jurors who heard about the case, all eight said that they did not have an opinion one way or another on the case.

[¶ 20.] Consequently, the trial court did not err by denying Verhoef's request to remove Orton and Mullenberg for cause.

### ISSUE TWO

[¶ 21.] **Did the trial court err by denying Verhoef's motion for judgment of acquittal?**

■■■■■ [¶ 22.] At the close of the State's case, Verhoef moved for judgment of acquittal on the six counts. The trial court granted the motion regarding an alleged incident in May 1999 but denied it regarding incidents alleged in February, March, April, October and November. Verhoef claims the evidence was insufficient to sustain the convictions since AV's testimony regarding the dates conflicted with the dates she told the investigating officer, who also testified. In addition, he contends that there is no evidence that his penis touching her leg on November 18, 1999 was done for sexual gratification.

The standard of review for denial of a motion for judgment of acquittal is whether the "evidence was sufficient to sustain the convictions." *[State v.] Larson* 1998 SD 80 at ¶ 9, 582 N.W.2d [15]

at 17. "When reviewing sufficiency of the evidence, this [C]ourt, considers the evidence in a light most favorable to the verdict." *[State v.] Jones,* 521 N.W.2d [662] at 672-3 [ (S.D.1994) ] (citing *State v. Blalack,* 434 N.W.2d 55, 59 (S.D. 1988)). "A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt." *Id.* at 673 (quoting *Blalack,* 434 N.W.2d at 60). "We do not resolve conflicts in the evidence, pass on the credibility of the witnesses, determine the plausibility of an explanation, or weigh the evidence." *State v. White,* 1996 SD 67 ¶ 24, 549 N.W.2d 676, 682 (citing *State v. Andrews,* 393 N.W.2d 76, 80 (S.D.1986); *State v. Blakey,* 332 N.W.2d 729, 731 (S.D.1983)).

*State v. Karlen,* 1999 SD 12 ¶ 49, 589 N.W.2d 594, 605.

■■■■■ [¶ 23.] There was some discrepancy between the dates of the incidents AV testified to and those the investigating officer testified AV told him. In addition, there was confusion over where AV's mother worked in February, but no conflict over the fact that she worked at night, whether it be at a bar or a casino. In any event, conflicts in evidence and credibility of witnesses are matters for the jury, not this court. *Karlen,* 1999 SD 12 at ¶ 49, 589 N.W.2d at 605.

■■■■■ [¶ 24.] In addition, in viewing the evidence in the light most favorable to the verdict, it is apparent that the evidence was sufficient. AV testified in graphic detail about sexual incidents that no child that age should know. She was able to link the incidents to specific events occurring in various months of the year. In addition, Verhoef's claim that his penis

touching AV's leg was inadvertent is disingenuous. He entered his daughter's bed where she was asleep, naked from his waist to his ankles, pleaded with her to help him, and tried to push her hands to his penis where it touched her leg.

[¶ 25.] We affirm.

[¶ 26.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, participating.