2004 WY 94

**John S. KLAHN, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 02–259.

Supreme Court of Wyoming.

Aug. 13, 2004.

Rehearing Denied Sept. 21, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] John S. Klahn (Klahn) appeals a conviction on one count of sexual exploitation. Klahn contends that the district court abused its discretion when it denied his challenges for cause on three potential jurors. While we conclude the district court abused its discretion when it denied the challenge to one of the potential jurors, we affirm Klahn's conviction because there was no showing that the error was prejudicial.

## ISSUE

[¶ 2] The parties agree that the sole issue raised in this appeal is:

Whether the trial court abused its discretion when it denied Mr. Klahn's challenges for cause?

## FACTS

[¶ 3] In January 2001, Klahn's neighbor discovered three nude photographs of her fourteen-year-old daughter, GW, in Klahn's home. Klahn was charged with one count of exploitation of a child in violation of Wyo. Stat. Ann. § 6–4–303(b)(iv) (LexisNexis 2003)[1] and one count of taking indecent liberties with a minor in violation of Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2003).[2]

[¶ 4] The sole issue raised in this case relates to jury selection. During *voir dire*, the district court and the parties examined in chambers members of the jury pool who each had indicated that they harbored potential prejudice that might affect their ability to be fair and impartial. The examinations of three potential jurors are relevant to this appeal. The first, Juror # 139, indicated she had life experiences that she believed could affect her ability to sit on the jury panel:

THE COURT: Go ahead.

[JUROR # 139]: Well, based on the information that I have concerning the case, I need to be real honest, you know. That was the whole point of being a juror was to be completely honest. I was molested when I was seven by an 18–year–old. And in those days that was not something you ever brought to trial or pressed charges. You just ignored it, you know.

Consequently, many, many years later my five-year-old daughter was molested by a 16–year–old boy. And that involved the legal system.

Can I go into this trial and be honest, you know, and give this guy a fair chance? Probably, based on all the facts. But I will tell you this: It's not going to take much. And if I even—I mean I wouldn't—it wouldn't take much evidence for me to say guilty because of my strong convictions.

I feel spared—basically, show no mercy. That's my attitude. That's not probably something you want to hear. And I'm sure I'm going to be the first one out the door. I'm going to be honest with you. I'm going to be very, very vocal.

THE COURT: Now, [Juror # 139], the Court would instruct you if selected as a juror about the law of the case and about the standard you would have to apply. And you've already heard before anyone charged with a crime can be convicted a juror has to be convinced that there is proof beyond a reasonable doubt of all elements of the crime.

Could you look at the evidence and make that type of analysis in your own mind if selected as a juror?

[JUROR # 139]: Well, let's say hypothetically if I saw a picture of a minor, nude pictures taken by a gentleman; and this girl was a minor, like I said, it wouldn't take much. I wouldn't be able to hear -

1. § 6–4–303. Sexual exploitation of children[.]
   . . . .
   (b) A person is guilty of sexual exploitation of a child if, for any purpose, he knowingly:
   . . . .
   (iv) Possesses child pornography . . . [.]
   Wyo. Stat. Ann. § 6–4–303(a)(ii) (Lexis Nexis) defines "child pornography" as:
   "... any visual depiction, including any photograph, film, video, picture, computer or computer-generated image or picture, whether or not made or produced by electronic, mechanical or other means, of explicit sexual conduct, where:
   (A) The production of the visual depiction involves the use of a child engaging in explicit sexual conduct;
   (B) The visual depiction is, or appears to be, of a child engaging in explicit sexual conduct;

   (C) The visual depiction has been created, adapted or modified to appear that a child is engaging in explicit sexual conduct; or
   (D) The visual depiction is advertised, promoted, described or distributed in a manner that conveys the impression that the material is, or contains, a visual depiction of a child engaging in explicit sexual conduct."

2. § 14–3–105. Immoral or indecent acts[.]
   (a) Except under circumstances constituting sexual assault in the first, second or third degree as defined by W.S. 6–2–302 through 6–2–304, any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony.

THE COURT: I really don't want to ask you a hypothetical and I don't want you to relay to us necessarily what your verdict would be on some hypothetical or assumed set of facts, because you haven't heard anything yet.

[JUROR # 139]: Right.

THE COURT: As [defense counsel] pointed out in the courtroom, there's no evidence against this man presented to you yet.

But my question to you is, if selected as a juror, would you promise to hear both sides of the case and only convict if you were convinced by the—beyond a reasonable doubt that each element of the crime had been presented to you? Could you promise to do that?

[JUROR # 139]: I don't know. I don't know if I could do that. I'm already—I guess something like this is—I don't know. I can't explain it to you. Being a victim and having my daughter be a victim, I'm probably not going to be as fair as other jurors who are not emotionally involved; not so much with this case, but from previous experience. And I'll just be quite honest.

THE COURT: The attorneys are very glad to have all of that information, because all of us have prejudices. Everybody does. And not everybody is as honest at disclosing those, and that's something they want to know. But having a prejudice or life experience does not preclude you from being a good juror. In fact, sometimes the best jurors have life experience.

Without commenting on the level of evidence it will take to tip you over, if selected as a juror, you know, would you base the case only on the evidence presented in the courtroom?

[JUROR # 139]: Uh-huh.

THE COURT: Another way of looking at this, I suppose, would be to say if your husband were the guy on the stand, could you judge it in that way? You see what we're getting at here?

[JUROR # 139]: Yeah.

THE COURT: Counsel, do you have any questions for [Juror # 139]?

[PROSECUTOR]: But you haven't really come to the conclusion that the Defendant here is guilty?

[JUROR # 139]: Not without hearing the facts, no. I'm just saying I might not have to hear all of the facts. That's all I'm saying. Something that might be presented to me, whatever it might be, it would be easier for me.

[PROSECUTOR]: But you would be willing to listen to all of the evidence?

[JUROR # 139]: Sure.

[PROSECUTOR]: Go ahead, [defense counsel].

[DEFENSE COUNSEL]: Are you telling us you would have a problem holding the State to their burden of proof of beyond a reasonable doubt when you say it wouldn't take much?

[JUROR # 139]: I'm saying you (indicating) are going to present evidence and you're (indicating) going to come in here and counter evidence, whatever they have, and counter. That's obviously how it works. I'm saying it's not going to take much. That's all I'm saying. I'm not going to be in there arguing with myself and say, is he or is he not? I have the evidence in front of me. I don't know. It might be easier to sway me the other way because of previous experience. I'm being honest with you. I don't know how I'm going to be, whatever, happens. You guys asked the question, was there a chance anybody might be slightly biased; and I raised my hand. That's why I'm here.

[DEFENSE COUNSEL]: Do you believe the prosecutor should have to prove this beyond a reasonable doubt?

[JUROR # 139]: Well, the burden of proof is upon them, obviously; they have to prove the guilt. But your job is to try to counter that, too. So I—just depends on what the facts are. Just not going to take much.

[DEFENSE COUNSEL]: Do you believe they ought to have to prove it?

[JUROR # 139]: To prove that he is guilty?

[DEFENSE COUNSEL]: Uh huh.

[JUROR # 139]: Yeah, I—can I also make a comment, to be honest?

[DEFENSE COUNSEL]: Sure.

[JUROR # 139]: I don't think that we would be at trial if they didn't feel that they had proof. That is just—I don't think it would go that far. There would be no case. So that kind of—you know, I am not the kind of—I'm sure I'm not making a lot of points here in this room, but—I'm not going to lie to you, either.

[DEFENSE COUNSEL]: So you have a problem with the presumption of innocence, also?

[JUROR # 139]: No, I do not. I believe that not everybody is guilty. I don't believe that. I mean we have to have it. Not everybody is going to be guilty. There are innocent people. I do believe that. It's just that this subject matter kind of hits a little close to home.

[DEFENSE COUNSEL]: Okay. We do appreciate your honesty about your feelings.

[¶ 5] The second potential juror, # 124, knew some of the defense witnesses and questioned their credibility:

[THE PROSECUTOR]: [Juror # 124], you just feel that you couldn't be at all fair and impartial here?

[JUROR # 124]: To be quite honest today, no. I've got a splitting headache and I'm tired.

[PROSECUTOR]: Were you the one that works at night, too?

[JUROR # 124]: I worked all night.

[PROSECUTOR]: So you don't get much rest, either?

[JUROR # 124]: No, sir. But—I can't, in all honesty, say that I could be impartial. I really can't. And I know that's not fair. I know that. But I have to be honest.

[DEFENSE COUNSEL]: Which defense witnesses do you know?

[JUROR # 124]: [Names three people.]

[DEFENSE COUNSEL]: And you have knowledge about them you've gained outside of Court that is going to affect how you judge their credibility?

[JUROR # 124]: Yes, sir.

[DEFENSE COUNSEL]: And you've—and you feel they are not particularly credible based on what you know about them outside of Court; is that what you're saying?

[JUROR # 124]: Yes, sir.

[DEFENSE COUNSEL]: Did you know [the victim], also?

[JUROR # 124]: No, I don't know her.

[DEFENSE COUNSEL]: Would it be hard for you to set aside your outside knowledge of these witnesses and judge their credibility with kind of a blank slate?

[JUROR # 124]: I think so.

[DEFENSE COUNSEL]: Okay. Thanks.

THE COURT: [Juror # 124], bottom line is a good juror can know something about the case, can know witnesses. A good juror can have prejudices. That's okay, because we all do. The key is, would you promise to set aside those prejudices and judge the case based only on the facts presented from witnesses in the courtroom? Could you do that?

[JUROR # 124]: Yeah.

THE COURT: Thanks for coming in and talking with us. I'll let you go ahead and be at ease here for a few minutes.

[JUROR # 124]: Okay.

[¶ 6] The third potential juror, # 90, had family members who were molested as children:

THE COURT: If you would have a seat there sir.

You indicated in the courtroom that you had something you wanted to maybe talk about in private. Go ahead.

[JUROR # 90]: Yes, I have been exposed in two different relationships that somebody has been molested. One is my wife that I was married to for 12 years. Secondly, my girlfriend, her daughter also was molested; and I've just seen what has happened to them. Basically, with my wife, I think part of our divorce was because of that. And just seeing the child growing up, I just didn't like the situation that had happened.

THE COURT: You see an impact based on their victimization, then?

[JUROR # 90]: Uh-huh.

. . . .

THE COURT: As I've been telling a lot of people, [Juror # 90], the key to being a good juror is to be able to judge a case based only on the facts presented by the witnesses in the courtroom. So, it's okay to have prejudices. It's—you know, hopefully everybody agrees that we should uphold the law, for example. But, of course, both sides want you to be able to judge a case only on the facts introduced in the courtroom, because that gives them equal opportunity.

You think you could do that despite your prior experiences?

[JUROR # 90]: I—at this time I really couldn't tell you truthfully. Being truthful, I'm basically biased. Okay? I'll be truthful with you in this circumstance just because of that and stuff I've seen.

Like my girlfriend, her husband was convicted. He was, you know, incarcerated. They let him out, and he did it again.

THE COURT: Was that in Wyoming?

[JUROR # 90]: Yes, it was. It was here in Buffalo.

THE COURT: How long ago was that, do you remember?

[JUROR # 90]: It would have to be 25 years ago, 30 years ago, perhaps.

THE COURT: So her daughter is now an adult -

[JUROR # 90]: Yes.

THE COURT:—I take it?

[JUROR # 90]: Yep.

THE COURT: Well, I think you understand the basics of what we're getting at, [Juror # 90]. You know if you were charged with some crime you would want jurors that were able listen [sic] to both sides before they decide.

[The prosecutor] and [defense counsel] might have some questions for you.

[PROSECUTOR]: [Juror # 90], we understand what you're saying. But are you really saying that you right now feel that Mr. Klahn is guilty?

[JUROR # 90]: No, I don't at this time.

[PROSECUTOR]: Could you listen to the evidence from both sides and make a determination?

[JUROR # 90]: Perhaps, perhaps. But I couldn't sit here and say truthfully yes or no. Yes, I could listen to it. Still, I have those feelings -

[PROSECUTOR]: Okay.

[JUROR # 90]:—that I can't get rid of. I'm only human. Sure, I believe you're innocent until you're proven guilty.

[DEFENSE COUNSEL]: Does your experience make you—your job as a juror is going to be to figure out the facts. You know, you're not like passing moral judgment; but you're deciding what the facts are. Does your experience, you feel, affect your ability to judge the facts?

[JUROR # 90]: No, I think I could judge the facts.

[DEFENSE COUNSEL]: Are you going to be less inclined to make the State prove it beyond a reasonable doubt because of your experience?

[JUROR # 90]: Yeah, it's definitely got to be proven to me. Again, I'd have to listen to both sides.

[DEFENSE COUNSEL]: So exactly how do you think your bias would affect your job as a juror?

[JUROR # 90]: Not fairly, for one, not being fair.

[DEFENSE COUNSEL]: So you would have trouble giving my client the benefit of a reasonable doubt?

[JUROR # 90]: Basically.

[DEFENSE COUNSEL]: Just because he's accused?

[JUROR # 90]: Just because of circumstances I've been brought and been exposed to the situation and seeing exactly what has happened to them people. I'm not saying he's guilty or not guilty, but I have a real problem with it.

[DEFENSE COUNSEL]: Would you want to have you on your own jury if you were charged with something like that?

[JUROR # 90]: Would I want to be on my own jury? I feel like I wouldn't be on that

kind of jury, because I wouldn't do something like that.

[DEFENSE COUNSEL]: Okay. Thank you.

THE COURT: Thanks for coming in and talking with us, [Juror # 90]. If you want to go back out into either the courtroom or hallway, we'll be back out there in a few minutes.

[¶ 7] Klahn moved the court to excuse each of these three jurors for cause. The court denied the motions:

[DEFENSE COUNSEL]: ... I move that [Juror # 124] be excused, largely based on her having prejudged as to the credibility of defense witnesses, that [Juror # 150] be excused, because she didn't feel she could be impartial, that [Juror # 139] be excused for the same reason, that [Juror # 76] be excused due to the possibility of severe economic hardship.

THE COURT: [Prosecutor]?

[PROSECUTOR]: I believe that as we talked to them more, I think [Juror # 124], [Juror # 150], and [Juror # 139], especially, said she was not prejudicial against the Defendant, had not made up her mind and was not prejudicial or biased. And I think all three of them said that. So, we would oppose, you know, them being struck for cause.

THE COURT: The Court would grant your motion with respect to [Juror # 150], excuse her for cause. The Court will deny the motion with respect to the others.

....

[DEFENSE COUNSEL]: I'd make a motion to excuse [Juror # 90] for cause. He was the one that had two, a wife and girlfriend [sic] molested. Went back and forth on whether he could fairly judge the facts. But he did say he was biased, and to me the weight of his statements was that he would have trouble being fair to Mr. Klahn based on the accusations.

[PROSECUTOR]: Your Honor, I kind of agree with what [defense counsel] is saying, but he did indicate he was willing to listen to both sides. And he also said he had not made up his mind as to Mr. Klahn's guilt or innocence, so we would oppose that cause request. And we have none.

THE COURT: The court is going to deny the motion to excuse [Juror # 90] for cause. I'm sure that counsel are glad that he was open with us, though, for purposes of determining how to exercise peremptory challenges.

[¶ 8] At the conclusion of a two-day trial, the jury convicted Klahn of sexual exploitation of a child but acquitted him on the indecent liberties count. This appeal followed.

## DISCUSSION

[¶ 9] The test we apply to determine if a prospective juror should be dismissed for cause is whether or not that juror would be able to render a fair and impartial verdict based upon the evidence adduced at trial and the court's instructions. *Kerns v. State*, 920 P.2d 632, 635 (Wyo.1996) (citing *Munoz v. State*, 849 P.2d 1299, 1302 (Wyo. 1993)). The question of whether a juror is biased is a question of fact reserved for the trial court. *Id.*; *Jahnke v. State*, 682 P.2d 991, 1000 (Wyo.1984). We review the trial court's decision for an abuse of discretion. *Kerns*, 920 P.2d at 635; *Munoz*, 849 P.2d at 1302. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily and capriciously." *Penner v. State*, 2003 WY 143, ¶ 7, 78 P.3d 1045, ¶ 7 (Wyo.2003) (quoting *Brock v. State*, 967 P.2d 26, 27 (Wyo.1998) and *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998)). If a defendant fails to challenge a juror, and then later accepts the jury panel, then he waives any objection to the service of a particular juror. *Kerns*, 920 P.2d at 635; *Munoz*, 849 P.2d at 1302.

[¶ 10] We begin by considering if the district court abused its discretion when it denied Klahn's challenges for cause against the three jurors. There is no dispute that each of the three jurors exhibited some prejudice. The only question is whether or not the jurors demonstrated an ability to set

aside that prejudice and serve on the jury fairly and impartially. We have consistently held that if a juror can judge witness credibility and make a determination based on the evidence adduced at trial in conjunction with the jury instructions, then a trial court does not abuse its discretion when denying a challenge for cause even if the juror has some connection to witnesses or parties to the case. *Kerns*, 920 P.2d 632 (court did not abuse its discretion in denying challenge for cause on juror who was a cousin of a witness because juror had stated he could judge the credibility of witnesses based on trial evidence alone); *Arner v. State*, 872 P.2d 100 (Wyo.1994) (relationship or acquaintance with a police officer involved in the investigation of the case does not establish bias *per se* ); *Summers v. State*, 725 P.2d 1033 (Wyo. 1986), *on rehearing*, 731 P.2d 558 (Wyo.1987) (court did not abuse its discretion in denying challenge for cause on juror who was familiar with murder victim); *Krahn v. Pierce*, 485 P.2d 1021 (Wyo.1971). Simply put, if a prospective juror can set aside any supposed bias and decide a case only on the evidence presented in court, then there are no grounds for a successful challenge for cause. *Munoz*, 849 P.2d at 1302. It is the trial court's prerogative to give considerable weight to a potential juror's statement that he or she could fairly and impartially serve on a jury. *Kerns*, 920 P.2d at 636.

[¶ 11] Klahn claims that the trial court abused its discretion by denying his challenges for cause against the three prospective jurors. Klahn exercised peremptory challenges on each of the jurors and objected to the jury as empanelled.

[¶ 12] After reviewing the entire record of the *voir dire*, we partially agree with Klahn. The *voir dire* of Juror # 90 is especially troubling. As noted in the facts above, this juror's ex-wife and his girlfriend's daughter were molestation victims. Initially, the juror hedged on his ability to make a judgment based upon the evidence from both parties. In response to two direct questions, the juror backed off that position and declared that he could judge the facts and hold the State to its burden of proof. Immediately thereafter, however, an exchange took place with de-

fense counsel in which the juror indicated that he could not be fair. It is worth setting out again the excerpt from that part of the juror's *voir dire:*

[DEFENSE COUNSEL]: So exactly how do you think your bias would affect your job as a juror?

[JUROR # 90]: Not fairly, for one, not being fair.

[DEFENSE COUNSEL]: So you would have trouble giving my client the benefit of a reasonable doubt?

[JUROR # 90]: Basically.

[DEFENSE COUNSEL]: Just because he's accused?

[JUROR # 90]: Just because of circumstances I've been brought and been exposed to the situation and seeing exactly what has happened to them people. I'm not saying he's guilty or not guilty, but I have a real problem with it.

After this exchange, the juror was asked a final question about whether he would want himself on his own jury. The juror demurred by stating that he would not be on that kind of jury because he would not do "something like that." The trial court then passed the juror for cause.

[¶ 13] There is no definitive statement from Juror # 90 to the effect that he could put aside his family history and be a fair juror. The examination ended after the juror had clearly stated that he could not be fair and would have trouble giving Klahn the benefit of a reasonable doubt because of his personal circumstances. There was no attempt to rehabilitate the juror. Our deference to a trial court on rulings for challenges for cause is subject to that court's full exploration of whether a juror's perceived bias would prevent him or her from rendering a fair and impartial verdict. *Kerns*, 920 P.2d at 636. The failure to rehabilitate a juror while passing for cause is an abuse of discretion. *See People v. Luman*, 994 P.2d 432, 435–36 (Colo.App.1999). Juror # 90's statements that he could not be fair were not rehabilitated by either the court or the prosecution: There is no statement from the Juror that he would be able to consider the case only on the evidence presented in court

under the law, as instructed, without regard to his stated bias. Therefore, we must conclude that the juror was unable to set aside his bias and that the district court abused its discretion when it denied the challenge for cause.

[¶ 14] The next Juror, # 124, knew several of the defense witnesses and expressed skepticism of their credibility. The juror stated that it would be hard for her to set aside personal knowledge of these witnesses and judge them by only their testimony in this case. In response the trial court asked:

> THE COURT: [Juror # 124], bottom line is a good juror can know something about the case, can know witnesses. A good juror can have prejudices. That's okay, because we all do. The key is, would you promise to set aside those prejudices and judge the case based only on the facts presented from witnesses in the courtroom? Could you do that?
>
> [Juror # 124]: Yeah.

It is a close call as to whether or not this was a sufficient rehabilitation of Juror # 124. After emphatically stating her bias against Klahn's witnesses, the only question relating to her ability to set aside her prejudices and make a decision based on the facts of this case is answered with what can only be characterized as a tepid "yeah." Ideally, a full exploration of Juror # 124's perceived bias should have proceeded until a definitive answer one way or the other was obtained. Nevertheless, we do not find an abuse of discretion in the case of this juror in light of our deference to the district court on the question of whether to grant a challenge for cause. However, we reiterate that the better practice in these situations would be to examine the potential juror closely in order to determine as definitively as possible if they could judge the matter fairly and impartially.

[¶ 15] The final juror, # 139, was a victim of abuse, as was her daughter. Juror # 139 expressed concern that her experience would make it difficult for her to sit on the jury. However, in her case, the record clearly shows that after extensive questioning from the court and the parties, the juror was able to affirm an ability to make a judgment

based only on the evidence adduced at trial while holding the State to its burden of proof. Here, the trial court, after fully exploring the juror's perceived prejudice and having the opportunity to listen to her answers and observe her demeanor, concluded that there were no grounds for a challenge for cause. There was no abuse of discretion by the trial court in denying Klahn's challenge for cause on Juror # 139.

[¶ 16] Demonstrating that the trial court erred by not dismissing a juror challenged for cause is only the first step. Once it has been established that a juror should have been dismissed on a challenge for cause, our precedent holds that:

> It is sufficient that appellant challenged the unqualified juror for cause, the court denied the challenge, appellant did not accept the jury because of it, and he exhausted his peremptory challenges.

*Munoz,* 849 P.2d at 1302 (quoting *Lee v. State,* 743 P.2d 296, 298 (Wyo.1987)); *Kerns,* 920 P.2d at 635. In other words, a "trial court's denial of a proper challenge for cause is prejudicial when it forces the challenging party to use a peremptory challenge which could otherwise have been used to excuse another juror." *Lee,* 743 P.2d at 299; *Patterson v. State,* 691 P.2d 253, 256 (Wyo.1984), *cert. denied,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985). In effect, the rule in Wyoming has been that as long as the defendant exhausted his peremptory challenges and preserved the error by refusing to accept the panel, reversal was automatic regardless of whether the defendant suffered actual prejudice.

[¶ 17] Here, Klahn exercised all of his peremptory challenges. After the jury was selected in this case, Klahn declared that he did not accept the panel. At that time, however, Klahn did not identify on the record any of the seated jurors as to whom he would have exercised a peremptory challenge. On appeal, Klahn contends, for the first time, that he would have exercised a peremptory challenge on Juror # 165 and Juror # 94 had he not been forced to use peremptory chal-

lenges on the three jurors identified above.[3] Under our precedent as it is currently constituted, Klahn has made the requisite showing of prejudicial error.

[¶ 18] Our standard for establishing prejudicial error when a challenge for cause is improperly denied was adopted in 1979. *Parks v. State,* 600 P.2d 1053, 1055 (Wyo. 1979) (citing *Foster v. State,* 240 Ga. 858, 242 S.E.2d 600, 602 (1978)). Recently, there has been a movement away from an automatic reversal standard towards a requirement that there be a showing of prejudice before an otherwise valid conviction will be reversed. The evolution of this movement was set out in an opinion issued by the Arizona Supreme Court last year:

> In 2000, the Supreme Court in [*United States v. Martinez–Salazar,* 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)], in examining Federal Rule of Criminal Procedure 24(b), held that an erroneous denial by the district court of a challenge for cause of a juror, followed by the defendant's use of a peremptory challenge to remove that juror, does not deprive the defendant of any "rule-based or constitutional right" if the defendant is subsequently convicted by an impartial jury. 528 U.S. at 307, 120 S.Ct. 774, 145 L.Ed.2d 792. Specifically, the Court held the following:

>> We ... hold that a defendant's exercise of peremptory challenges ... is not denied or impaired when the defendant chooses to use a peremptory challenge to remove a juror who should have been excused for cause. Martinez–Salazar and his co-defendant were accorded 11 peremptory challenges, the exact number ... allowed.

> *Id.* at 317, 120 S.Ct. 774, 145 L.Ed.2d 792.

> The Court acknowledged the important role peremptory challenges play in "reinforcing a defendant's right to trial by an impartial jury." *Id.* at 311, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792. However, the Court pointed out that "such challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." *Id.* (citing [*Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988)]; *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 63 L.Ed. 1154 (1919)). Thus, a defendant's exercise of a peremptory challenge to cure a trial court's error in denying a challenge for cause, without more, does not violate the constitutional right to an impartial jury. *Id.* at 313, 120 S.Ct. 774, 145 L.Ed.2d 792.

> The Court, however, rejected the Government's argument that the federal rule should be construed to require that a defendant use a peremptory challenge to remove a juror the trial court should have struck for cause "to preserve the claim that the for-cause ruling impaired the defendant's right to a fair trial." *Id.* at 314, 120 S.Ct. 774. Instead, the Court concluded that "Martinez–Salazar had the option of letting [the venireperson] sit on the petit jury and, upon conviction, pursuing a Sixth Amendment challenge on appeal." *Id.* at 315, 120 S.Ct. 774, 145 L.Ed.2d 792. Martinez–Salazar made a strategic choice when he elected to remove the juror. *Id.* Martinez–Salazar's due process rights were not violated, because, in the Court's view, "[a] hard choice is not the same as no choice." *Id.*

> In a concurring opinion, Justice Scalia, joined by Justice Kennedy, expressed reservations about the majority's conclusion that Martinez–Salazar could have opted to leave the challenged juror on the jury, and upon conviction, pursue a Sixth Amendment challenge on appeal. *Id.* at 318–19, 120 S.Ct. 774, 145 L.Ed.2d 792. He questioned whether the "normal principles of waiver" would not "disable a defendant

---

**3.** Juror # 165, who served on the jury panel, informed the court that she had been the victim of date rape and had a niece who had been sexually molested. The juror noted at one point that with these experiences it would be hard for her to decide the case based only on the facts presented at trial. Klahn acknowledges that the Juror was rehabilitated and there was no basis for a cause challenge. However, he insists that he would have exercised a peremptory on the juror, if he had had any remaining. Klahn also states that he would have excused Juror # 94, who expressed a belief that Playboy magazine was offensive.

from objecting on appeal to the seating of a juror he was entirely able to prevent." *Id.* at 318, 120 S.Ct. 774, 145 L.Ed.2d 792. Because this question was not presented, he believed that the majority should not have addressed it. *Id.* at 319, 120 S.Ct. 774, 145 L.Ed.2d 792. Accordingly, *Martinez–Salazar* left open the question of whether a harmless error analysis would apply to a defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause. *See* William T. Pizzi & Morris B.

Hoffman, *Jury Selection Errors on Appeal,* 38 Am.Crim. L.Rev. 1391, 1403–06 (2001).

Despite the question left open by *Martinez–Salazar,* several state courts, citing *Martinez–Salazar,* have adopted the rule that, absent a showing of prejudice, a defendant's use of a peremptory challenge to cure a trial court's erroneous denial of a challenge for cause does not violate any right based on the state constitution, rule or statute. *See, e.g., Green v. Maynard,* 349 S.C. 535, 564 S.E.2d 83, 86 (S.C.2002); *State v. Verhoef,* [2001 SD 58], 627 N.W.2d 437, 441–42 (S.D.2001); *State v. Fire,* 145 Wash.2d 152, 34 P.3d 1218, 1225 (Wash. 2001); *State v. Lindell,* [2001 WI 108], 629 N.W.2d 223, 250, ¶ 112–13, 245 Wis.2d 689, 629 N.W.2d 223 (Wis.2001).

In *Verhoef,* the South Dakota Supreme Court held that *Martinez–Salazar* "clearly sets aside" prior case law that any federal constitutional right was denied when a defendant used a peremptory challenge to remove a juror the trial should have struck for cause, thereby losing a peremptory challenge that could have been used on another juror. 627 N.W.2d at 441. The court further found no principled basis for interpreting state statutory or constitutional provisions as granting broader rights than the United States Constitution. *Id.* at 442.

*Fire* and *Lindell* both held that because the right to peremptory challenges is not a constitutional right, a defendant's curative use of a peremptory challenge should be reviewed for harmless error. *Fire,* 34 P.3d at 1222; *Lindell,* 629 N.W.2d at 250, ¶ 111.

In *Fire,* the Washington Supreme Court acknowledged conflicting lines of Washington appellate cases on this issue. 34 P.3d at 1222. One line of cases held that even though no biased juror sat on a trial, "prejudice occurs in the deprivation of one peremptory challenge to which a defendant is entitled." *Id.* at 1222–23 (citing *State v. Stentz,* 30 Wash. 134, 70 P. 241 (Wash. 1902)). Another line of cases held that when a defendant uses a peremptory challenge to cure a trial court's error, a further showing of prejudice is needed before reversal is required. *Id.* Relying on *Martinez–Salazar,* the *Fire* court held that

if a defendant through the use of a peremptory challenge elects to cure a trial court's error in not excusing a juror for cause, exhausts his peremptory challenges before the completion of jury selection, and is subsequently convicted by a jury on which no biased juror sat, he has not demonstrated prejudice, and reversal of his conviction is not warranted.

*Id.* at 1225, 242 S.E.2d 600.

Similarly, the Wisconsin Supreme Court adopted *Martinez–Salazar* and overruled *State v. Ramos,* 211 Wis.2d 12, 564 N.W.2d 328 (Wis.1997), a case that had established a rule similar to [*State v. Huerta,* 175 Ariz. 262, 855 P.2d 776 (1993) (requiring automatic reversal of a conviction where a defendant uses a peremptory strike to remove a prospective juror whom the trial court should have excused for cause.)] *Lindell,* 629 N.W.2d at 236, ¶ 53, 245, ¶ 91–93, 252, ¶ 120. In its discussion, the *Lindell* court stated the following: "Another disturbing element of the *Ramos* decision is that it requires a new trial in cases where the trial was nearly perfect and the verdict is unquestionably sound. Yet, we examine error in other situations—both statutory and constitutional—for harmful effect." 629 N.W.2d at 249, ¶ 107 (footnotes omitted).

To be sure, a few courts have rejected *Martinez–Salazar. See, e.g., People v. Lefebre,* 5 P.3d 295, 307 (Colo.2000) (rejecting both *Ross* and *Martinez–Salazar,* and

holding that "[o]ur decisions have consistently recognized that, under Colorado law, a defendant suffers reversible prejudice if he is forced to use a peremptory challenge to remove a juror whom the trial court failed to remove for cause and he exhausts his peremptory challenges"); *Gamble v. Commonwealth,* 68 S.W.3d 367, 374 (Ky. 2002) (holding, without discussing *Martinez–Salazar,* that prejudice is presumed when a defendant is forced to exhaust his peremptory challenges against prospective jurors who should have been excused for cause); *Brown v. Commonwealth,* 33 Va. App. 296, 533 S.E.2d 4, 8 n. 2 (Va.Ct.App. 2000) (forcing a defendant to use a peremptory challenge to remove a juror the trial court should have struck for cause is prejudicial error because the defendant is denied his statutory right to exercise his full complement of peremptory strikes on a panel free from members who should have been struck for cause).

Nevertheless, a majority of state courts, both before and after *Martinez–Salazar,* hold that the curative use of a peremptory challenge violates neither a constitutional right, nor a rule-based or statute-based right. These courts require a showing of prejudice before a case will be reversed when a defendant uses a peremptory challenge to remove a juror the trial court should have excused for cause.

*State v. Hickman,* 205 Ariz. 192, ¶¶ 10–20, 68 P.3d 418, ¶¶ 10–10 (Ariz.2003).[4] The Arizona Supreme Court went on to adopt the harmless error analysis overturning its precedent that adopted the automatic reversal rule. *Hickman,* 68 P.3d 418, ¶¶ 39–40.

[¶ 19] We concur with the reasoning expressed in *Hickman.* Peremptory strikes do not implicate any constitutional right. *Martinez–Salazar,* 528 U.S. at 313, 120 S.Ct. at 780. *Green v. Maynard,* 349 S.C. 535, 564 S.E.2d 83, 86 (2002); *Lindell,* 629 N.W.2d at 251–52. The concept of harmless error is recognized by rule in Wyoming. *See* W.R.Cr.P. 52(a) ("Harmless Error: Any error, defect, irregularity or variance which does not affect substantial rights shall be

disregarded."); *see also* W.R.A.P. 9.04. It simply does not make any sense to require a new trial where a verdict is constitutionally sound. We examine error for harmful effect in other situations, including those where the claim of error is statutorily or constitutionally based. *See generally, Hannon v. State,* 2004 WY 8, ¶ 11, 84 P.3d 320, ¶ 11 (Wyo.2004) ("Restrictions on the right to confront witnesses are subject to the harmless error analysis."); *Belden v. State,* 2003 WY 89, ¶ 50, 73 P.3d 1041, ¶ 50 (Wyo.2003) ("A deprivation of the right to be present at all critical stages of a trial is subject to harmless error analysis."); *Simmons v. State,* 2003 WY 84, ¶ 15, 72 P.3d 803, ¶ 15 (Wyo.2003) (prosecutorial misconduct reviewed for harmless error); *Urbigkit v. State,* 2003 WY 57, ¶¶ 30–31, 67 P.3d 1207, ¶¶ 30–31 (Wyo.2003) (failure to swear jury pursuant to Wyo. Stat. Ann. § 7–11–107 can constitute harmless error); and *Lewis v. State,* 2002 WY 92, ¶ 26, 48 P.3d 1063, ¶ 26 (Wyo.2002) ("The erroneous admission of statements taken in violation of a defendant's Fifth Amendment rights is subject to harmless error analysis."). Accordingly, we hold that a harmless error analysis will apply to a defendant's use of peremptory challenge to cure a trial court's erroneous denial of a challenge for cause and overrule our precedent to the extent that it espouses an automatic reversal rule.

[¶ 20] Applying this analysis to this case, we conclude that the district court's error in denying the challenge for cause to Juror # 90 was harmless. "An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred." *Seward v. State,* 2003 WY 116, ¶ 13, 76 P.3d 805, ¶ 13 (Wyo.2003) (quoting *Skinner v. State,* 2001 WY 102, ¶ 25, 33 P.3d 758, 766–67 (Wyo.2001), *cert. denied,* 535 U.S. 994, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002) and *Solis v. State,* 981 P.2d 34, 36 (Wyo. 1999)). There is nothing in the record to indicate that any of the jurors who served on the panel were not qualified to serve. All of the jurors—including the two identified by Klahn as likely recipients of a peremptory

---

4. For a list of the state court decisions that required a showing of prejudice before the *Mar-* *tinez–Salazar* decision, see *Hickman,* 68 P.3d 418, ¶ 8.

challenge if he had had one available—were passed for cause. We find no abuse of discretion by the district court in those determinations. Since there is no demonstration by Klahn that the jury was not impartial and that he was denied a fair trial, he cannot meet his burden of showing harmful error.

## CONCLUSION

[¶ 21] We hold that absent a showing of prejudice a defendant's use of peremptory challenge to cure a trial court's erroneous denial of a challenge for cause does not violate any statutory or constitutional right and cannot constitute reversible error. The jury that decided Klahn's case was fair and impartial. No unqualified juror served on the panel. Therefore, we affirm Klahn's conviction and sentence.